IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK C. GONSALVES,<br><br>        Plaintiff,<br><br>  vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | No. 2:15-cv-0940-TLN-CMK<br><br><br>FINDINGS AND RECOMMENDATION |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pending before the court are plaintiff's motion for summary judgment (Doc. 16) and defendant's cross-motion for summary judgment (Doc. 17). Plaintiff has also filed a reply brief (Doc. 20).

**I. PROCEDURAL HISTORY**

Plaintiff applied for social security benefits with a protective filing date of January 3, 2012, alleging an onset of disability on August 30, 2007 (later modified to January 3, 2012), due to schizophrenia, paranoia, anxiety, nervousness (Certified administrative record ("CAR") 76, 84, 95, 192-95, 207). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested an administrative hearing, which was held on August 12, 2013, before

Administrative Law Judge ("ALJ") Daniel G. Heely. In a September 5, 2013, decision, the ALJ concluded that plaintiff is not disabled[1] based on the following findings:

> 1. The claimant has not engaged in substantial gainful activity since January 3, 2012, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: schizophrenia, depression anxiety, degenerative joint disease of the left knee and obesity (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR  416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

   Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
   Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
   Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
   Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
   Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

   The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

         perform work activities with the following limitations: he can lift and carry 25 pounds frequently and 50 pounds occasionally. He can stand for 6 hours in an 8-hour workday with normal breaks. He can walk for 6 hours in an 8-hour workday with normal breaks. He can sit for 6 hours in an 8-hour workday with normal breaks. He is limited to simple, routine, and repetitive tasks. In addition, he is limited to no more than occasional public contact.

    5.     The claimant is unable to perform any past relevant work (20 CFR 416.965).

    6.     The claimant was born on July 17, 1969 and was 42 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

    7.     The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

    8.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

    9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

    10.     The claimant has not been under a disability, as defined in the Social Security Act, since January 3, 2012, the date the application was filed (20 CFR 416.920(g)).

(CAR 12-24).

After the Appeals Council declined review on March 30, 2015, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be

3

1  considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v.
2  Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's
3  decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.
4  Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative
5  findings, or if there is conflicting evidence supporting a particular finding, the finding of the
6  Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).
7  Therefore, where the evidence is susceptible to more than one rational interpretation, one of
8  which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.
9  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal
10 standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th
11 Cir. 1988).

### III.  DISCUSSION

Plaintiff argues the ALJ erred in the following ways:  (1) the ALJ failed to provide specific and legitimate reasons for not crediting plaintiff's treating psychiatrist; (2) the ALJ failed to provide proper rationale for discounting plaintiff's subjective complaints and credibility; (3) the ALJ failed to properly consider lay evidence; and (4) the ALJ failed to sustain her burden of establishing that there is other work in the national economy plaintiff can perform.

**A.   Medical Opinion**

Plaintiff first argues that the ALJ failed to provide adequate reasons based on substantial evidence for rejecting his treating psychiatrist's opinion.  Dr. Koike opined that plaintiff was limited at least to some extent in all work related activities.  Dr. Koike determined plaintiff was precluded from performing in the following areas for 5% of an 8-hour work day: make simple work-related decisions, interact appropriately with the general public, ask simple questions or request assistance, respond appropriately to changes in the work setting, and be aware of normal hazards and take appropriate precautions.  Dr. Koike determined plaintiff was precluded from performing in the following areas for 10% of an 8-hour work day: remember

locations and work-like procedures, understand and remember very short and simple instructions, carry out very short and simple instructions, perform activities within a schedule, maintain regular attendance, and be punctual and within customary tolerances, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest period, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior, and to adhere to basic standards of neatness and cleanliness. Finally, Dr. Koike determined plaintiff was precluded from performing in the following areas for 15% or more of an 8-hour work day: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods of time, work in coordination with or in proximity to others without being distracted by them, accept instructions and respond appropriately to criticism from supervisors, and set realistic goals or make plans independently of others. (CAR 520-21).

The ALJ gave Dr. Koike's opinion little weight

> because it understates the claimant's mental capacity and is internally inconsistent with the doctor's own treatment notes, which documented improvements in the claimant's mental status at numerous evaluations (Exhibits 14F and 17F). In addition, the opinion is inconsistent with the admitted effectiveness of the claimant's psychiatric medication (Exhibits 5F/8, 14F and 17F). Moreover, the opinion is inconsistent with the claimant's relatively normal daily living activities and generally adequate social activities as discussed above, which indicate considerable mental capacity (Exhibits 3E, 14F, 17F, and hearing testimony).

(CAR 21).

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given

to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

Plaintiff argues the reasons provided are not supported by substantial evidence. The undersigned disagrees.  Plaintiff contends that despite improvement in some areas, plaintiff still has significant signs and symptoms of mental deficiencies.  It is clear from both the medical records and the ALJ's decision, that everyone agrees plaintiff has some mental deficiencies.  The

ALJ did not completely disregard plaintiff's mental deficiencies in determining his RFC. However, the undersigned agrees with the ALJ that the improvements noted in the medical records were more than occasional improvement that the plaintiff contends. Rather, the records support a finding of vast improvement from December 2011, when plaintiff was involuntarily hospitalized on a 5150 hold to reporting in December 2012 that he was "doing well." (CAR 498). Similarly, the ALJ's interpretation of plaintiff's daily activities based on his testimony and the record as a whole is not unsupported. While plaintiff argues the ALJ's findings is based on selectively cited evidence, reading the record as a whole the undersigned does not agree. The ALJ's cited evidence are examples, not selective isolated incidents. Plaintiff downplays his daily activities and also cites to selective evidence in the record to support of his position, but that does not undermine the findings of the ALJ. The record is replete with indications that plaintiff's daily activities improved with treatment, including taking care of himself and doing his part to help in the household, increasing his social activities, and feeling more confident. The ALJ's determination that he is capable of doing simple, routine and repetitive tasks with only occasional public contact is supported by the record. As stated above, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed. See Thomas, 278 F.3d at 954. Giving the ALJ's determination proper deference, the undersigned finds the reasons provided for discounting Dr. Koike's opinion are supported by substantial evidence.

**B.     Credibility**

Plaintiff next argues the ALJ erred by failing to provide proper rationale for discounting plaintiff's subjective complaints and credibility. He contends the reasons provided are neither adequate nor adequately supported.

In finding plaintiff's statement not entirely credible, the ALJ stated:

> As discussed above, the claimant's allegations of debilitating physical symptoms are not well supported by the medical evidence of record. Despite his left knee pain, his physical functioning has

been essentially normal, as evidenced in the treatment records (Exhibits 11F and 20F).  In addition, the treatment for the claimant's left knee pain has been generally conservative and routine, which indicates that the condition is not debilitating (Exhibits 7E and 18E).  Moreover, there is no evidence that he requires any assistive device for ambulation.  Further, a diagnostic image of his left knee revealed only mild degenerative changes (Exhibit 11F/7).

Although the claimant experiences numerous mental symptoms, he has been prescribed appropriate medications and the record reveals that the medications have been generally successful in controlling these symptoms.  He frequently stated during the period from January 3, 2012 trough January 18, 2013 that his medication was successful in reducing his symptoms (Exhibit 5F/8, 14F, and 17F).  A mental health record dated July 12, 2013 also mentioned that his mental symptoms were stable with medications (Exhibit 19F).  In addition, he stated on February 15, 2013 that his nightmares, auditory hallucinations, and decreased energy had stopped, which indicates that his mental conditions had improved (Exhibit 17F/4).

The claimant has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.  Despite his physical and mental impairments, he is independent in self-care and can carry out many household chores such as preparing simple meals, cleaning, doing laundry, and mowing a lawn.  He can work on cars.  He can handle his own finances.  He can use public transportation.  He is able to live with family, which shows he can get along with others.  He admittedly spends time with family and friends sometimes, which indicates some ability to engage in social activities.  He reports having no problems getting along with others.  He can shop in stores, go out alone, attend weekly group meetings, and go to a casino weekly, which shows that he can be around people (Exhibit 3E, 14F, 17F, and hearing testimony).  He also stated on February 15, 2013 that he was able to make new friends and visit them weekly (Exhibit 17F/4).  He has the ability to drive a car sometimes and ride a bike 3 times a week, which requires a considerable degree of concentration.  He admittedly can follow written and spoken instructions adequately, which indicates some ability to concentrate.  His daily activities include watching television for 5 to 6 hours a day, which requires some concentration.  He is able to help take care of family members, which also requires some attention (Exhibit 3E, 14F, 17F, and hearing testimony).

A review of the claimant's work history shows that the claimant worked only sporadically prior to the alleged disability onset date, which raises a question as to whether the claimant's continuing unemployment is actually due to mental impairments (Exhibit 3D).

> The record reflects that the clamant has made inconsistent statements regarding matters relevant to the issue of disability. A medical record dated May 16, 2013 mentioned that the claimant last used drugs 8 months ago (Exhibit 20F/2). However, he testified at the hearing that he had been clean from drugs for 17 months. This discrepancy diminishes the persuasiveness of the claimant's subjective complaints and alleged functional limitations.
>
> The claimant showed no persuasive evidence of debilitating pain or discomfort while testifying at the hearing. In addition, the undersigned observed that the claimant was able to respond to questions and interact appropriately during the hearing, which indicated some social functioning ability. Moreover, the undersigned observed that the claimant was able to follow closely and participate fully during the hearing, which indicated some concentration ability. While the hearing was short-lived and cannot be considered a conclusive indicator of the claimant's overall level of pain and mental problems on a day-to-day basis, the apparent lack of discomfort and mental difficulties during the hearing is given some slight weight in reaching the conclusion regarding the credibility of the claimant's allegations and the claimant's residual functional capacity.

(CAR 19-20).

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d

341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Plaintiff contends the reasons provided by the ALJ were neither sufficient nor supported by the evidence. Specifically, as to plaintiff's improvement with treatment, plaintiff argues occasional improvement does not indicate he has the ability to sustain work activities. However, as discussed above, the medical records do not indicate any improvement was only occasional. Rather, the records show continued improvement with treatment. Plaintiff also argues the ALJ misstates the record as to his daily activities. The undersigned finds support in

the record for the ALJ's determination.  For instance, while plaintiff testified his mother does the cooking for the family, he stated he was capable of doing some cooking like using the microwave.  Plaintiff also clearly testified that he was capable of taking the bus, driving sometimes, and helping around the house unless his mother wants something done too fast.  (CAR 46).  He also spends time at the casino with his brother.  While his brother takes him, it is clear that plaintiff spent some of that time alone and the only reason he does not go more frequently is not having the money to spend.  Therefore, the ALJ's interpretation of plaintiff's daily activities is supported by the record.  Similarly, plaintiff attempts to reason out his inconsistent statements, that memory gaps are a symptom of his mental illness.  However, there is no indication that plaintiff was at all unsure as to when he last used methamphetamine and marijuana.  Instead he specifically stated the month and year, March of 2012.  (CAR 49).  The ALJ's determination that the inconsistency weighs against his credibility is not an unreasonable interpretation.

The undersigned finds the reasons provided by the ALJ for discrediting plaintiff are clear and convincing and supported by substantial evidence.  Further, even if some of the reasons provided could be found inadequate, there are sufficient reasons provided to support the credibility determination.  See Batson v. Commissioner of Social Security, 359 F.3d 1190, 1197 (9th Cir. 2004).  The undersigned finds no reversible error.

**C.  Lay Witness**

Next, plaintiff argues the ALJ erred by failing to properly consider lay evidence.  Specifically, plaintiff's brother completed a third party function report and the ALJ rejected the evidence as not supported by substantial evidence.

Specifically, the ALJ stated:

> Robert Gonsalves, the claimant's brother, completed a third party function report on March10, 2012, which corroborates the claimant's allegations (Exhibit 4E).  The report of Mr. Robert Gonsalves is given little weight because he is not an acceptable medical source and lacks the medical proficiency to render a

11

> reliable opinion on the claimant's limitations.  In addition, the report is inconsistent with the claimant's relatively normal daily living activities and generally adequate social activities as discussed above, which indicate considerable physical and mental capacity (Exhibits 3E, 14F, 17F, and hearing testimony).

(CAR 22).

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work.  See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e).  Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment."  See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).  Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness."  Dodrill, 12 F.3d at 919.  The ALJ may cite same reasons for rejecting plaintiff's statements to reject third-party statements where the statements are similar.  See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

Plaintiff contends the ALJ erred in rejecting Mr. Gonsalves' statements because he was not an acceptable medical source and that the ALJ overestimated plaintiff's daily activities and social functioning.  Defendant acknowledges the rejection of Mr. Gonsalves' statements because he is not an acceptable medical source was in error.  However, defendant argues that error was harmless as the other reasons for rejecting the statements were sufficient.  The undersigned agrees.  In addition to rejecting the statements for not being an acceptable medical source, the ALJ found the statements to be inconsistent with plaintiff's daily activities.  As discussed above, the ALJ's determination of plaintiff's daily activities was sufficient and rejecting the lay testimony for the same reasons the plaintiff's testimony was rejected is sufficient.  See Batson, 359 F.3d at 1197.  The undersigned therefore finds any error was

harmless, and no reversible error in the other reasons provided for rejecting Mr. Gonsalves' statements.

### D.     Work Availability

Finally, plaintiff argues the ALJ erred in at step five in that he failed to pose a complete hypothetical question to the vocational expert (VE). Specifically, he contends the hypothetical failed to include all of plaintiff's limitations supported by the record including his moderate limitations in concentration, persistence and pace as well as the limitations found by Dr. Koike.

The ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). Specifically, where the Medical-Vocational Guidelines are inapplicable because the plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony. See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

Plaintiff relies on several out of circuit and unpublished decisions, including Lubin v. Comm'r of Soc. Sec. Admin., 507 Fed. Appx. 709 (9th Cir. 2013) and Brink v. Comm'r

Soc. Sec. Admin, 343 Fed. Appx. 211 (9th Cir. 2009), to support his position that the ALJ should have included his moderate limitations in concentration, persistence and pace in the hypothetical posed to the VE. However, the undersigned finds this case is controlled by Stubbs-Danielson, 539 F.3d 1169 (9th Cir. 2008). As in Stubbs-Danielson, here the ALJ acknowledged plaintiff has mental limitations, especially related to his concentration abilities, but based on medical opinion he nevertheless found plaintiff capable of performing simple, routine tasks. See id. at 1173-74. Specifically, the ALJ accepted Dr. Ochitill's opinion wherein he opined that despite plaintiff's limitations, he maintained the ability to perform simple, repetitive work. (CAR 92) Thus, as the ALJ did in Stubbs-Danielson, and accepted by the Ninth Circuit, the ALJ in this case concluded that the plaintiff, despite deficiencies in his concentration and social functioning abilities, retained the ability to do simple, repetitive, routine tasks. The ALJ incorporated these limitations, supported by medical opinion, into plaintiff's RFC and into the hypothetical posed to the VE. See id.; see also Israel v. Asture, 494 Fed.Appx. 794, 796 (9th Cir. 2012). Thus, the undersigned finds no reversible error.

## IV. CONCLUSION

Based on the foregoing, the undersigned concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, the undersigned recommends that:

    1.    Plaintiff's motion for summary judgment (Doc. 16) be denied;

    2.    Defendant's cross-motion for summary judgment (Doc. 17) be granted; and

    3.    The Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written

objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  February 22, 2017

                                                *Craig M. Kellison*
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE